IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                              No. CR 96-717 MV

JOHNNY SANDIA,

     Defendant.


**<u>MEMORANDUM OPINION AND ORDER</u>**

     **THIS MATTER** is before the Court on Defendant Johnny Sandia's Motion to Dismiss for Outrageous Government Conduct, as adopted with the Court's permission from <u>United States v. Carlos Smith</u>, No. CR 96-718 MV, filed February 3, 1997 **[Doc. No. 16]**.  The Court also has pending Mr. Sandia's Motion for Clarification, filed January 7, 1998 **[Doc. No. 42]**.  The Court, having fully considered these motions, pleadings and relevant law, finds that they are not well taken and will be **denied**.


I.  The Motion to Dismiss Based on Outrageous Government Conduct.

     Responding to reports of commercial trafficking in protected species of wildlife in the Four Corners region, agents from the United States Fish and Wildlife Service carried out an undercover investigation in the winter of 1995-96.  During this investigation, agents met with various members of Jemez Pueblo, including Mr. Sandia, and allegedly purchased from him a Golden Eagle skin, wing bones from Golden Eagles, an eagle talon with digits, and tail feathers from eagles and Red-tailed

hawks, all protected species.  The United States has also charged Mr. Sandia with the capture and

killing of two other Golden Eagles, two Red-tailed hawks a Black-billed Magpie and two Northern

Flickers, in addition to the possession of hundreds of feathers from protected species.  Through the

adoption of Mr. Smith's motion, Mr. Sandia seeks to have his indictment dismissed based upon the

outrageous conduct of government agents.  In support of this motion, Mr. Sandia essentially asserts

that Jemez Pueblo is an area of extraordinary poverty, and that in offering money to purchase

protected species, the Government acted in such a manner as to require the dismissal of the

indictment.

To succeed on a claim that the government has acted so outrageously to require the dismissal

of an indictment, a defendant must show that the challenged conduct is "shocking, outrageous, and

clearly intolerable."  United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992).  More particularly,

the Tenth Circuit requires that a defendant demonstrate both the government's creation of the crime

and substantial coercion of the defendant.  Id. at 911.

With respect to the creation requirement, outrageous conduct occurs when the government

engineers and directs a criminal enterprise from start to finish, id., citing United States v. Ramirez,

710 F.2d 535, 539 (9th Cir. 1983), with the defendant contributing nothing more than his presence

and enthusiasm.  United States v. Sneed, 34 F.3d 1570, 1577 (10th Cir. 1994).  The government may

infiltrate an ongoing criminal enterprise without violating this standard.  Mosley, 965 F.2d at 911.

In this instance, Mr. Sandia allegedly sold and possessed a significant number of parts of protected

bird species, but he has not shown the kind of conduct on the part of the Government that would

meet the requirements of Mosley and Sneed.  At best, the Government approached Mr. Sandia to

purchase protected species from him.  Merely opening the bargaining, even when the buyer brings

2

cash to a transaction, does not rise to the level of creating a criminal offense.  Clearly the Government in this case has not manufactured a crime from whole cloth in order to prosecute a defendant who has become ensnared in the Government's scheme.  See United States v. Harris, 997 F.2d 812, 816 (10th Cir. 1993).

Neither did the Government coerce Mr. Sandia.  A successful coercion argument under the outrageous government conduct standard requires a high degree of coercion which must be particularly egregious.  Mosley, 965 F.2d at 912.  Nowhere has Mr. Sandia averred that the Government offered him a sum of money which was so high as to have the purpose of coercing him into committing an illegal act.  See Sneed, 34 F.3d at 1578.  Rather, he has only stated that Jemez Pueblo is an area of extraordinary poverty, implying that Mr. Sandia was in no position to refuse an offer from the Government.  The Court rejects this argument.  See Mosley, 965 F.2d at 913, citing United States v. Martinez, 749 F.2d 601, 604-05 (10th Cir. 1984).  The Court finds instead that Mr. Sandia has failed to show how the Government coerced him into the transactions which in part resulted in his prosecution.  The Court will, therefore, deny Mr. Sandia's motion.


II.  The Motion to Clarify

Defendant adopted, with the Court's permission, the Motion to Dismiss–First Amendment of then co-Defendant Leonard Magdalena.  This motion was based wholly on the argument, presented by both Defendant and the Government at the time, that some portion of the Religious Freedom Restoration Act, the former 42 U.S.C. §§ 2000bb *et seq.* survived the Supreme Court's ruling in City of Boerne v. P.F. Flores, Archbishop of San Antonio, 117 S.Ct. 2157 (1997), striking this statute as unconstitutional.  Because the Court has ruled against this argument, nothing survives of Leonard

Magdalena's motion as adopted by Mr. Sandia.  The Court will deny Mr. Sandia's Motion to Clarify.

**THEREFORE**,

**IT IS HEREBY ORDERED** that Defendant Johnny Sandia's Motion to Dismiss for Outrageous Government Conduct, as adopted with the Court's permission from <u>United States v. Carlos Smith</u>, No. CR 96-718 MV, filed February 3, 1997 **[Doc. No. 16]**, and Mr. Sandia's Motion for Clarification, filed January 7, 1998 **[Doc. No. 42]** be, and hereby are, **denied**.

MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE